1  Thomas B. Mayhew (State Bar No. 183539)
2  tmayhew@fbm.com
   MaryJo Lopez-Oneal (State Bar No. 337163)
3  mlopezoneal@fbm.com
4  Farella Braun + Martel LLP
   One Bush Street, Suite 900
5  San Francisco, California 94104
   Telephone: (415) 954-4400
6  Facsimile: (415) 954-4480
7
   Attorneys for
8  L'ORÉAL USA, INC.
9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| | |
|---|---|
| 13  TINA BARRALES, | Case No. 2:25-cv-07912-AH-MAR |
| 14          Plaintiff, | |
| 15     vs. | **L'ORÉAL USA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16  L'OREAL USA, INC. DBA LA ROCHE-POSAY, LLC, | |
| 17          Defendant. | Judge:  Hon. Anne Hwang |
| 18 | Hearing Date and Time: March 4, 2026 at 1:30 P.M. |
| 19 | |

20

21  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

22          PLEASE TAKE NOTICE THAT ON MARCH 4, 2026 at 1:30 P.M., or as

23  soon thereafter as the matter may be heard before the Honorable Anne Hwang, in

24  Courtroom 9C of United States Courthouse for the Central District of California,

25  Western Division, 350 W. 1st Street, Los Angeles, California 90012, Defendant

26  L'Oréal, USA Inc. ("L'Oréal") shall, and hereby does, move this court, pursuant to

27  Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for an order

28  dismissing Plaintiff's Class Action Complaint (Dkt. No. 1).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS - Case No. 2:25-cv-07912-AH-MAR

47445\20707844.7

This motion is made on the grounds that each of Plaintiff's causes of action fail to state a claim upon which relief can be granted.  The claims are barred by the prohibition on private enforcement in 21 U.S.C. section 337, and preempted by 21 U.S.C. section 355h(a)(2) and 379r because they seek to impose non-identical requirements for nonprescription sunscreen labeling.  The unjust enrichment claim fails to state a claim under New York law because it fails to plead an unusual situation not otherwise covered by contract and tort claims.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all pleadings, records and other documents on file with the Court in this action, and on such further oral and/or documentary evidence as may properly be presented at the time of the hearing of this motion.

Dated:  December 17, 2025          FARELLA BRAUN + MARTEL LLP


By: _____
    Thomas Mayhew

Attorneys for L'OREAL USA, INC.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

2

47445\20707844.7

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

<u>**TABLE OF CONTENTS**</u>

3    I.     INTRODUCTION AND SUMMARY OF ARGUMENT. ............................ 7

4    II.    ALLEGATIONS OF THE COMPLAINT. ........................................... 8

5    III.   DESCRIPTION OF THE SPF TEST PROCEDURE. .................................. 8

6    IV.    THE FEDERAL FOOD AND DRUG ADMINISTRATION, NOT
          PRIVATE PLAINTIFFS, ENFORCES FEDERAL OVER-THE-
7          COUNTER DRUG REGULATIONS, INCLUDING THE SPF
          LABELING MONOGRAPH. ............................................................. 9

8
           A.    Plaintiff's Case Is Based On Litigating An Alleged FDCA
9                Violation:  Allegedly Inaccurate "SPF" Labeling. ............... 10

10         B.    Private Attempts To Enforce The FDCA Are Barred By 21
                U.S.C. Section 337. ................................................................. 12
11
     V.    CLAIMS ATTEMPTING TO ENFORCE NON-IDENTICAL
12         REQUIREMENTS ARE PREEMPTED. ........................................... 15

13         A.    Using An SPF Value Based On Additional Testing Is Preempted. ...... 16

14         B.    Enforcing Plaintiff's Test Results Is Also Preempted Because
                Plaintiff's Laboratory Did Not Follow The FDA Procedure. ............... 20
15
                 1.    Plaintiff's Laboratory Set The Doses Based On A Lower-
16                    Than-Expected SPF, In Violation Of The FDA Rule. .............. 21

17               2.    The UV Doses For Test Subject # 3 Violated The Rule. .......... 22

18               3.    Conclusion. ....................................................................... 24

19   VI.   THE UNJUST ENRICHMENT CLAIM UNDER NEW YORK LAW
          SHOULD BE DISMISSED FOR FAILURE TO ALLEGE AN
20         UNUSUAL SITUATION NOT COVERED BY CONTRACT OR
          TORT CLAIMS. ......................................................................... 24
21
     VII.  CONCLUSION. ............................................................................. 25

22

23

24

25

26

27

28

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –                          3                        47445\20707844.7
Case No. 2:25-cv-07912-AH-MAR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Anglin v. Edgewell Personal Care Co.*,
   2018 WL 6434424 (E.D. Mo. Dec. 7, 2018)...................................................20, 24

*Argueta v. Walgreens Co.*,
   760 F. Supp. 3d 1028 (E.D. Cal. 2024) ...............................................................14

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014) ...................................................................19

*Bubak v. Golo, LLC*,
   2025 WL 2860044 (9th Cir. Oct. 9, 2025) ..........................................................14

*Cooper v. Anheuser-Busch, LLC*,
   553 F. Supp. 3d 83 (S.D.N.Y. 2021) ..............................................................24, 25

*Forouzesh v. CVS Pharmacy, Inc.*,
   2019 WL 652887 (C.D. Cal. Feb. 15, 2019)........................................................20, 24

*Gisvold v. Merck & Co.*,
   62 F. Supp. 3d 1198 (S.D. Cal. 2014) ......................................................10, 16, 19

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)......................................................................25

*Mee v. I A Nutrition, Inc.*,
   2015 WL 2251303 (N.D. Cal. May 13, 2015) .....................................................20

*Nexus Pharms., Inc. v. Central Admixture Pharmacy Servs., Inc.*,
   48 F. 4th 1040 (9th Cir. 2022) .............................................................................14

*PDK Labs, Inc. v. Friedlander*,
   103 F. 3d 1105 (2d Cir. 1997) .............................................................................15

*Perez v. Nidek Co.*,
   711 F. 3d 1109 (9th Cir. 2013) ............................................................................14

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) ...............................................................................13

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*Rubio v. Orgain, Inc.*,
　2019 WL 1578379 (C.D. Cal. Mar. 5, 2019) ....................................................20

*Somers v. Beiersdorf, Inc.*,
　467 F. Supp. 3d 934 (S.D. Cal. 2020) ...............................................................15

*Wilson v. ColourPop Cosms., LLC*,
　2023 WL 6787986 (N.D. Cal. Sept. 7, 2023), *appeal dismissed*,
　2023 WL 9112928 (9th Cir. Dec. 20, 2023) ......................................................15

## STATE CASES

*Corsello v. Verizon N.Y. Inc.*,
　967 N.E.2d 1177 (2012) .....................................................................................24

*Eckler v. Neutrogena Corp.*,
　238 Cal. App. 4th 433 (2015)........................................................................10, 15

*Kanter v. Warner-Lambert Co.*,
　99 Cal. App. 4th 780 (2002) ..............................................................................16

## FEDERAL STATUTES

21 U.S.C.
　§ 337 ............................................................................................................*passim*
　§ 337(a) ...............................................................................................................15
　§ 352(ee) .......................................................................................................11, 12
　§ 355h .................................................................................................................11
　§ 355h(a)(2) .................................................................................................*passim*
　§ 379r ...........................................................................................................*passim*
　§ 379r(a)(2) .........................................................................................................15

## FEDERAL RULES AND REGULATIONS

21 C.F.R.
　§ 201.327 .....................................................................................................*passim*
　§ 201.327(i) .........................................................................................................8
　§ 201.327(i)(1)(iii) ............................................................................................24
　§ 201.327(i)(3)(i) ...........................................................................................8, 18
　§ 201.327(i)(5) .....................................................................................................9
　§ 201.327(i)(5)(iii) .......................................................................21, 22, 23, 24
　§ 201.327(i)(5)(v) .....................................................................................9, 18, 22
　§ 201.327(i)(6) ...............................................................................................9, 17
　§ 201.327(i)(6)(i) ...............................................................................................22

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

5

47445\20707844.7

§ 201.327(a) ................................................................................................. 19
§ 201.327(a)(1) ............................................................................................... 8
§ 201.327(i)(4)(i)-(iv) ..................................................................................... 8
§ 201.327(i)(5)(i)-(iv) ..................................................................................... 8
§ 352 ............................................................................................................. 10

76 Fed. Reg. 35620 (June 17, 2011) ............................................................. 11

Ninth Cir. Rule 36-3 ..................................................................................... 14

## STATE STATUTES

California Business & Professions Code
§ 17200 ......................................................................................................... 15
§ 17500 et seq. ...................................................................................... 12, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

# I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT.</u>

Plaintiff Tina Barrales claims that the La Roche-Posay "Melt-In-Milk" sunscreen product she purchased does not have the sun protection factor ("SPF") value stated on the label, because Plaintiff's counsel re-tested with a different panel of human subjects and got different results. The claims should be dismissed.

Sunscreens are regulated as an over-the-counter drug by the Food and Drug Administration, which created a detailed testing methodology to determine the Sun Protection Factor ("SPF"), and then mandated that it be included on the label. Plaintiff's attempt to privately enforce this FDA over-the-counter drug regulation should be rejected because Congress provided in 21 U.S.C. section 337 for exclusive government enforcement of drug regulations and misbranding claims, not enforcement by private plaintiffs.

Plaintiff's claim is also preempted under 21 U.S.C. section 379r because the FDA regulation governing SPF values requires the manufacturer to label the product with the results of the SPF testing done prior to sale, and does not provide for revision of the SPF value based on subsequent or additional testing. Even if subsequent tests could override FDA's requirement that manufacturers label their products in accordance with the results of testing done prior to sale, Plaintiff's testing did not follow the required FDA methodology, and a state law claim based on this testing would thus impose different requirements than federal law. *See* 21 U.S.C. § 379r (preempting any state law requirement "different from or in addition to, or that is otherwise not identical with, a requirement under this chapter.").

Finally, Plaintiff's "nationwide class" claim for unjust enrichment also fails. Claims based on alleged warranties or even misrepresentations on product packaging do not plead an "unusual situation" as required for an unjust enrichment claim under New York law, because such claims are already covered by other contract and tort law claims.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

7

47445\20707844.7

## II.    <u>ALLEGATIONS OF THE COMPLAINT.</u>

Plaintiff Tina Barrales alleges that she bought a single tube of La Roche-Posay Anthelios Melt-In-Milk Sunscreen, labeled as SPF 60, at a Target store in Norwalk, California.  Compl. ¶ 9.  She alleges that it is from Lot # 18Y204, and has an expiration date of February 2026.  *Id.*  She does not allege she tested it.

Plaintiff alleges that her lawyer bought a second tube, this one purchased in February 21, 2025 from a CVS in Miami, Florida.  She alleges this one was tested, and that it was from Lot # 18Y902.  *Id.* ¶ 22.

The complaint alleges that the lawyer's purchase was tested by a laboratory in New Jersey.  *Id.* ¶¶ 23-24 and Exh. A.  Exhibit A shows the results.  The overall result of the test was SPF 34.  *Id.* ¶ 24.

## III.    <u>DESCRIPTION OF THE SPF TEST PROCEDURE.</u>

The Federal Food, Drug & Cosmetic Act requires the labeling of sunscreen products with an SPF value determined by a detailed testing procedure set forth in 21 C.F.R. section 201.327(i).  21 U.S.C. § 355h(a)(2) (labeling and effectiveness requirements of sunscreens governed by 21 C.F.R. § 201.327); 21 C.F.R. § 201.327(a)(1) (requiring sunscreen products to be labeled with the numerical SPF value resulting from testing under subsection (i)); *id.* (i) (procedure for determination of labeled SPF value).

The testing procedure requires a test panel of human subjects sufficiently large to produce a minimum of 10 valid test results.  *Id.* at (i)(3)(i).  The human test subjects are exposed to intense, graduated doses of simulated solar radiation on untreated skin, on skin treated with a "control standard" sunscreen made with padimate and oxybenzone as the active ingredients in fixed proportions and known to have an average SPF value of 16.3, and on skin treated with the product being tested.  *Id.* at (i)(4)(i)-(iv), (5)(i)-(iv).  The ratios between the minimum dose that produces redness (erythema) on untreated skin and on the skin treated with the control padimate-oxybenzone sunscreen and the test product are calculated; the

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR                    8                    47445\20707844.7

1  average of the ratios and certain statistical measures are compiled; a mathematical

2  formula then determines the "labeled SPF value." *Id.* at (i)(5) and (6).

3  Test subjects and their data can only be excluded from the calculation for

4  specified reasons set forth in section 201.327(i)(5)(v), such as that none of the

5  subsites showed a redness reaction for either the unprotected skin (precluding

6  calculation of an SPF because there would then be no value to put in the

7  denominator) or the protected skin (precluding calculation of an SPF because there

8  would then be no value to put in the numerator), because all of the subsites in a

9  series turned red (which would leave in doubt whether the actual number was lower

10 than the lowest dose), if the redness reactions were inconsistent (e.g., redness at a

11 lower dose but not a higher one), or the subject failed to comply (e.g., by not

12 returning within the time window, or by going out to get a suntan before results

13 were assessed).

14 The SPF determination is not considered valid if the SPF value of the control

15 padimate-oxybenzone sunscreen is more than 19.73 or less than 12.87. *Id.* at (i)(6).

16 This last point is significant enough to repeat:  even the defined padimate-

17 oxybenzone formula known to produce an average result of 16.3 may test much

18 lower or higher with a given panel, and the test result is still considered valid within

19 a broad range.  No one expects the same result every time.  The use of a small

20 sample of human subjects with different skin types means that the test can produce

21 widely variable results.

22 **IV.    THE FEDERAL FOOD AND DRUG ADMINISTRATION, NOT**
23 **PRIVATE PLAINTIFFS, ENFORCES FEDERAL OVER-THE-**
   **COUNTER DRUG REGULATIONS, INCLUDING THE SPF**
24 **LABELING MONOGRAPH.**

25 Each of Plaintiff's claims is based on the same core assertion:  that the SPF

26 value on the label is incorrect.  Because the labeling of SPF values is governed by

27 the Food, Drug & Cosmetic Act, Plaintiff's claim is barred by 21 U.S.C. section 337

28 as an improper attempt at private enforcement.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –                             9
Case No. 2:25-cv-07912-AH-MAR

47445\20707844.7

### A.    Plaintiff's Case Is Based On Litigating An Alleged FDCA Violation:    Allegedly Inaccurate "SPF" Labeling.

The federal Food, Drug & Cosmetic Act governs the labeling of sunscreen products, which are regulated as a nonprescription "over-the-counter" ("OTC") drug. *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 439 (2015) ("The FDCA authorizes the FDA to regulate, among other things, the ingredients and labeling of nonprescription, over-the-counter (OTC) drugs such as the sunscreen products at issue."); *Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198, 1202 (S.D. Cal. 2014).  The "SPF" value, an abbreviation for "Sun Protection Factor," is defined by 21 C.F.R. section 201.327 as the ratio of the simulated solar energy required to produce a minimal erythemal response on treated vs. untreated skin in a defined panel of test subjects and is required by federal law to be stated on the principal display panel of all nonprescription sunscreen labels.

In the CARES Act passed in March 2020, Congress expressly stated that nonprescription sunscreen labeling and effectiveness would be governed by 21 C.F.R. section 201.327:

(a)  Nonprescription drugs marketed without an approved drug application under section 355 of this title, as of March 27, 2020, shall be treated in accordance with this subsection.

***

(2)  With respect to sunscreen drugs subject to this section, the applicable requirements in terms of conformity with a final monograph, for purposes of paragraph (1)(A)(i), shall be the requirements specified in part 352 of title 21, Code of Federal Regulations, as published on May 21, 1999, beginning on page 27687 of volume 64 of the Federal Register, except that *the applicable requirements governing effectiveness and labeling shall be those specified in section 201.327 of title 21, Code of Federal Regulations*.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

10

47445\20707844.7

21 U.S.C. § 355h(a)(2) (emphasis added).[1]  Sunscreen products are deemed

misbranded under the FDCA if they do not comply with section 355h.  *See* 21

U.S.C. § 352(ee) ("A drug or device shall be deemed misbranded . . . (ee) If it is a

nonprescription drug that is subject to section 355h of this title . . . and does not

comply with the requirements under section 355h of this title.").

Plaintiff's complaint makes clear that she seeks to enforce misbranding

claims based on what she contends the FDA regulations about SPF labeling require

(though she incorrectly applies them, as explained in section V below).  At

paragraph 23, she explains that her contention that the SPF is mislabeled is based on

her counsel's laboratory's attempt to apply FDA standards for "calculation of the

label SPF":

> The lab tested the Products by performing a clinical evaluation . . . and
> calculation of the label SPF, following the FDA testing methods
> embodied in FDA Final Rule, Labeling and Effectiveness Testing,
> Sunscreen Drug Products for Over-the-Counter Human use, 76 Fed.
> Reg. 35620 (June 17, 2011), and FDA, Final Administrative Order
> (OTCOOOOO6); Over-the-Counter Monograph MO20:  Sunscreen
> Drug Products for Over-the-Counter Human Use (Sept. 24, 2021).

Compl. ¶ 23.

Plaintiff's citations in paragraph 23 are to federal regulatory documents

adopted under FDA's jurisdiction to enforce and administer the FDCA.[2]  Plaintiff

---

[1]     Plaintiff does not allege that the sunscreen at issue in this case has an approved drug application, so it is subject to section 355h(a)(2)'s command:  "the applicable requirements governing effectiveness and labeling" are those in 21 C.F.R. section 201.327.

[2]     Both of these FDA documents contain the same test procedure for determining SPF values. The first citation is to 76 Fed. Reg. 35620 (June 27, 2011).  The final rule adopted in 76 Fed. Reg. 35620 is codified in the Code of Federal Regulations at 21 CFR section 201.327, and as stated above, is the standard referred to in 21 U.S.C. section 355h(a)(2) of the FDCA.  Plaintiff's second citation, to OTC000006/Over-the-Counter Monograph M02020, implements the CARES Act and re-adopts the same SPF testing methodology.  It was issued on September 24, 2021 and repeats the text of 21 C.F.R. section 201.327 with respect to SPF testing.  It is available online here: https://www.accessdata.fda.gov/drugsatfda_docs/omuf/Order/Final%20Administrative%20Order

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

11

47445\20707844.7

points to no standard for determining the SPF value other than the FDCA itself.  In light of 21 U.S.C. section 355h(a)(2), stating that sunscreen labeling is governed by 21 C.F.R. section 201.327, she cannot do so.

Plaintiff's claims for unjust enrichment, express warranty, false advertising under California Business and Professions Code section 17500 et seq., unlawful competition based on violation of California Business and Professions Code section 17500 et seq., and common law fraud are all FDCA misbranding claims:  that the product is labeled with SPF 60, but that Plaintiff contends it should be labeled SPF 34 based on testing allegedly conducted under 21 C.F.R. section 201.327(i).  *See* Compl. ¶¶ 59 (unjust enrichment:  "misrepresentations . . . that the Product provided SPF protection of 60"); 69 (17200 claim:  "representations that the Product provides SPF protection of 60 . . ."); 80 (17500 claim:  "misleadingly represented that the Product provides SPF protection of 60, when in fact the SPF protection it provides is materially less than 60"); and 89 ("represented that the Product provides SPF protection of 60 . . .").  Plaintiff also seeks to "restrain and enjoin" the labeling. Compl. ¶ 75 ("Unless restrained and enjoined, Defendant will continue to misrepresent the Product as providing SPF protection of 60."); *see also* ¶¶ 6, 76, Prayer "F".  These are misbranding claims expressly covered by the FDCA.  *See* 21 U.S.C. § 352(ee), 355h(a)(2); 21 C.F.R. 201.327.  Plaintiff's claims thus each seek to enforce the FDCA, or to restrain violations of it.

## B.    Private Attempts To Enforce The FDCA Are Barred By 21 U.S.C. Section 337.

The claims are barred because the Federal Food, Drug & Cosmetic Act ("FDCA") expressly prohibits private enforcement.  In 21 U.S.C. section 337, Congress expressly limited who could enforce the FDCA.  Only the United States

%20OTC000006_M020-Sunscreen%20Drug%20Products%20for%20OTC%20 Human%20 Use.pdf (last visited Dec. 17, 2025).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

12

47445\20707844.7

government, or State governments in certain authorized circumstances involving food, may enforce the FDCA or bring an action to restrain violations of it:

> (a)  Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.
>
> (b)(1) A State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations, of [FDCA provisions governing food] if the food that is the subject of the proceedings is located in the State.
> (2) No proceeding may be commenced by a State under paragraph (1)—
> (A) before 30 days after the State has given notice to the Secretary that the State intends to bring such proceeding,
> (B) before 90 days after the State has given notice to the Secretary of such intent if the Secretary has, within such 30 days, commenced an informal or formal enforcement action pertaining to the food which would be the subject of such proceeding, or
> (C) if the Secretary is diligently prosecuting a proceeding in court pertaining to such food, has settled such proceeding, or has settled the informal or formal enforcement action pertaining to such food.  In any court proceeding described in subparagraph (C), a State may intervene as a matter of right.

21 U.S.C. § 337.

The Ninth Circuit has repeatedly applied section 337's bar on private enforcement of the FDCA:

- In *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010), the Ninth Circuit held that section 337 "limits the ability of a private plaintiff to pursue claims under state law theories where such claims collide with the exclusive enforcement power of the federal government."  Because the FDCA provides FDA with the power to investigate potential violations, and a number of enforcement remedies including injunction, civil and criminal penalties, and seizure, a private plaintiff could not litigate an alleged FDCA violation "in a circumstance where the FDA has not itself concluded that there was such a violation." *Id.*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

13

47445\20707844.7

- In *Perez v. Nidek Co.*, 711 F. 3d 1109, 1119 (9th Cir. 2013), plaintiff's "fraud by omission claim" "exist[s] solely by virtue of the FDCA . . . requirements" and was thus barred by the exclusive enforcement provision of section 337. "Perez's fraud by omission claim is impliedly preempted because it conflicts with the FDCA's enforcement scheme." *Id.*

- In *Nexus Pharms., Inc. v. Central Admixture Pharmacy Servs., Inc.*, 48 F. 4th 1040 (9th Cir. 2022), plaintiff brought a claim that its competitor was violating state laws, including those of California, Florida, Connecticut, Pennsylvania, and Arizona, that prohibited sale of drugs not approved by FDA. The Ninth Circuit held that to allow plaintiff

  > 'to proceed with a claim that Defendants violated this law when the FDA did not so determine would, in effect, permit [plaintiff] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make.' Proceedings to enforce or restrain violations of the FDCA, including the compounding statute, must be by and in the name of the United States, not a private party. Nexus's claim is such a proceeding, so it is barred by the exclusive enforcement statute.

  *Id.* at 1049.

- In *Bubak v. Golo, LLC*, 2025 WL 2860044 (9th Cir. Oct. 9, 2025) (unpublished/non-precedential under Ninth Cir. Rule 36-3), the Ninth Circuit recently held that a claim for violation of California's Unfair Competition Law, premised on an alleged violation of the FDCA as incorporated in the Sherman Food, Drug & Cosmetic Law, was barred because "The FDCA expressly prohibits private enforcement" and the claims would require "litigating 'the alleged underlying FDCA violation.'" *Id.* at *1.

District courts in the Ninth Circuit have followed these decisions: claims for misrepresentation, violation of California's Unfair Competition Law, or breach of express warranty have each been held barred by section 337 where they relied on litigating violations of the FDCA, even when the FDCA was not referred to in the complaint. *See, e.g., Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1037 (E.D. Cal. 2024) (collecting cases; applying section 337 bar to consumer claims for breach

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

14

47445\20707844.7

of express warranty and under Cal. Bus. & Prof. § 17200 that alleged OTC drug did not comply with any FDA monograph); *Wilson v. ColourPop Cosms., LLC*, 2023 WL 6787986, at *8 (N.D. Cal. Sept. 7, 2023), *appeal dismissed,* 2023 WL 9112928 (9th Cir. Dec. 20, 2023) (dismissing breach of warranty, unjust enrichment, fraud, Consumer Legal Remedies Act, and Business & Professions Code section 17200 and 17500 claims, all based on section 337 bar). The precise allegations made by Plaintiff are not important if Plaintiff's claims seek to enforce the FDCA: "As other courts have recognized, 'the [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA.'" *Wilson*, 2023 WL 6787986, at *8 (quoting *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 939-40 (S.D. Cal. 2020)); *PDK Labs, Inc. v. Friedlander*, 103 F. 3d 1105, 1113 (2d Cir. 1997) (where plaintiff's "true goal is to privately enforce alleged violations of the FDCA," even when framed as violation of state unfair competition laws or Lanham Act, claims were barred by 21 U.S.C. § 337(a)).

In sum, under section 337, only the federal government can enforce the FDCA's over-the-counter drug rules. All claims should be dismissed because of the statutory bar in section 337.

## V.  CLAIMS ATTEMPTING TO ENFORCE NON-IDENTICAL REQUIREMENTS ARE PREEMPTED.

In addition to the bar on private enforcement, the FDCA preempts enforcement of any state law standard applicable to nonprescription drugs "that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter . . . ." 21 U.S.C. § 379r(a)(2). For sunscreen products specifically, the CARES Act established the FDA regulation as the labeling requirement. 21 U.S.C. § 355h(a)(2). A state law claim that would impose a labeling standard different than the FDA standard is thus preempted. *Eckler*, 238 Cal. App. 4th at 439 ("Title 21 United States Code section 379r reflects Congress's

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

15

47445\20707844.7

express intention generally to preempt state requirements on the labeling of nonprescription drugs such as the sunscreen products at issue."); *Gisvold*, 62 F. Supp. 3d at 1202-03 (holding claims for breach of express warranty and under California consumer protection statutes about sunscreen labeling were expressly preempted under section 379r as attempt to impose non-identical requirements); *see also Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) (explaining that "when a state law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted" and dismissing plaintiffs' "breach of express warranty, fraud and deceit, false advertising, unfair competition, and violations of the Consumer Legal Remedies Act" claims because, as they were "also based ultimately on the assertion that the labels on those products are no longer accurate or adequate, they too cannot escape preemption").

Plaintiff's lawsuit here seeks to impose additional or different requirements from those imposed by 21 C.F.R. section 201.327. First, Plaintiff seeks to impose a new rule that the SPF value can be challenged or changed by additional testing (whether commissioned by enterprising class action attorneys or even just a manufacturer that wants a do-over), rather than using the result of the initial panel tested to establish the label claim. This is contrary to the FDA rule that only disqualifies a panel if there are more than three invalid results, and that states that data can be rejected only for four specific causes. Testing of a second panel is not one of the four causes listed by FDA. Second, Plaintiff's substitution of its own test results for earlier testing would impose non-identical requirements because Plaintiff's laboratory did not itself follow the FDA regulation.

### A.    Using An SPF Value Based On Additional Testing Is Preempted.

Plaintiff seeks to enforce the results of her testing, showing an SPF 34: "The results of the testing commissioned by Plaintiff's counsel reveal that the Product does not provide SPF 60 protection, but rather SPF 34 protection." Compl. ¶ 24.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

16

47445\20707844.7

1   But Plaintiff does not plead (plausibly or otherwise), however, that her test is the

2   only valid test, or that it was the first.[3]

3          Given the small sample size and use of a variety of skin types, not to mention

4   the individuality of people's skin and even variations on the skin of a single person,

5   an SPF test following the FDA procedure in section 201.327 may yield different

6   results each time a given formula is tested.  This is not because of error:  even the

7   control padimate-oxybenzone formula will predictably yield different results, and

8   FDA considers the test valid as long as those results fall within a broad range:  16.3

9   +/- 3.4, or an SPF of 12.87 to 19.73.  21 C.F.R. § 201.327(i)(6).  Plaintiff's own

10  testing illustrates this:  the padimate-oxybenzone tested at the lower end of the valid

11  range for the test subjects involved, with a reported SPF value of just 13 instead of

12  its average SPF of 16.3.  Compl. Exh. A at 10.[4]

13         So what happens if a particular sunscreen formula is tested twice, with one

14  result being higher and another lower?  Should the company label with the higher,

15

16  _____

    [3]      Plaintiff does not allege that there was no prior test.  To the contrary, Plaintiff claims that
17  there has been prior testing, though she doesn't say what the result was, even to allege that it
    wasn't SPF 60.  *See* Compl. ¶ 29 (alleging that "Defendant . . . did perform testing on the Product,
18  including concerning the protection against ultraviolet radiation provided by the Product, prior to
    the Product being packaged, labeled, advertised, marketed, distributed, and offered for sale to
19  consumers.").  Instead of alleging the results of prior testing, or some FDA-recognized basis for
    disregarding them, Plaintiff vaguely asserts that something about that testing "should have made
20  Defendant aware that the true SPF protection provided by the Product is significantly lower than
    SPF 60."  *Id.*  While the allegations are somewhat unclear, Plaintiff seems to contend that
21  Defendant "should have known" that the SPF was lower based on the "chemical formula and
    ingredients (and the quantities of each) alone," instead of based on the SPF testing itself.  *Id.* at ¶
22  28.

23
    [4]      Showing the breadth of the range that FDA treats as valid:  the difference between a 12.87
24  and a 19.73 is the same as the difference between a 39.1 and a 60.  Plaintiff's testing showed an
    average of 40.5 for the ten subjects.  *See* Compl., Exh. A at 10.  The average was then reduced
25  because of the high error rate.  If Plaintiff had not intentionally lower doses based on a lower
    "expected value" (see section V.B.1 below), the results of its test could have been even closer to
26  the label claim, even with a panel of subjects whose skin yielded lower than average SPF values
    for the control sunscreen.  *See* Compl., Exh. A at 10 (SPF of control formula was 13, rather than
27  16.3).

28

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

17

47445\20707844.7

the lower, the first, the second, the average?  Is it allowed to use its first result only until the second result occurs, or can it change its SPF value based on a prediction of what a second test might show?  If there's a third test, what then?

The FDA regulation answers these questions:  the results of SPF testing are based on a single panel.  Plaintiff's attempt to substitute new test results, years after the product was put on the market, is preempted as applying a non-identical requirement for sunscreen labeling.  Three aspects of the regulation show that re-testing for a different result is contrary to the rule, and that Plaintiff's contention that re-testing can determine the SPF value seeks to impose a non-identical requirement.

First, test results can only be disregarded based on the reasons in section 201.327(i)(5)(v), which provides:

> (v)  **Invalid test data.**  Reject test data for a test subject if erythema is not present on either the unprotected or protected test sites; or erythema is present at all subsites; or the responses are inconsistent with the series of UV doses administered; or the subject was noncompliant (e.g., the subject withdraws from the test due to illness or work conflicts or does not shield the exposed testing sites from further UV radiation until the MED is determined).

21 C.F.R. § 201.327(i)(5)(v).  Contrary to this rule, under Plaintiff's theory of the case, a manufacturer could, or even must, ignore panelist test data if later testing by a different panel shows a different result.  And then, presumably, that panel's results could be disregarded after a further re-test.  Ad infinitum.  This would be a significant change or addition to the FDA rule, which limited the grounds on which data could be rejected.

Second, section 201.327(i)(3)(i) provides "A test panel should include enough subjects to produce a minimum of 10 valid test results.  A maximum of three subjects may be rejected from this panel based on paragraph (i)(5)(v) of this section."  The rule thus requires using the results of the initial test panel to set the labeled SPF, not to use multiple panels, or to average the results of testing from

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

18

47445\20707844.7

1    multiple labs.  It also reinforces that the results of an initial test of ten valid results

2    cannot be ignored based on additional testing of more people, because doing so

3    would be disregarding more than three subjects' results, contrary to the rule.

4         Third, section 201.327(a) requires the manufacturer to "insert numerical SPF

5    value resulting from testing under paragraph (i) of this section" on the principal

6    display panel.  This reference is necessarily to the pre-sale testing, not hypothetical

7    future follow-up testing by a plaintiff's lawyer.  Under the language of the rule, the

8    manufacturer could not lawfully ignore test results and put an SPF value of 34 by

9    predicting what future testing might show.  Plaintiff's attempt to enforce its June

10   2025 testing results would impose a non-identical requirement – i.e., not part of the

11   rule – that a manufacturer should not label with the results of initial testing because

12   of the possibility that re-testing with additional people might eventually show a

13   different result.

14        Put differently, plaintiff's lawsuit seeks to impose a different or additional

15   requirement, and certainly a non-identical one,[5] from that in section 201.327:  a new

16   requirement of duplicate results on re-testing, and an ability to invalidate prior test

17   data based on subsequent testing.  The Court should reject an interpretation of the

18   FDA regulation that permits new results to invalidate prior ones.

19        Applying preemption in another sunscreen case, one court explained:

20   "Significantly, the regulations promulgated by the Final Rule *mandate* that OTC

21   sunscreen labels state the SPF value resulting from the detailed testing procedure

22   described in the regulation."  *Gisvold*, 62 F. Supp. 3d at 1202.  By bringing a state

---

[5] A non-identical requirement for an over-the-counter drug is preempted, because it diverges from federal law.  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376 (S.D.N.Y. 2014) (plaintiff's claim that "restores enamel" on mouthwashes was false, misleading, and a breach of warranty dismissed as preempted because FDA had taken no position against the claim in the mouthwash over-the-counter monograph:  "If successful, this litigation would do exactly what Congress, in passing section 379r of the FDCA, sought to forbid:  using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation.").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

19

47445\20707844.7

law case attempting to force L'Oreal to state a different SPF value based on re-testing, Plaintiff is imposing a non-identical requirement. The claims are preempted.

## B. Enforcing Plaintiff's Test Results Is Also Preempted Because Plaintiff's Laboratory Did Not Follow The FDA Procedure.

In any event, Plaintiff's testing did not follow section 201.327(i). Enforcing Plaintiff's results would thus impose a non-identical requirement compared to the FDA standard.

"[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted." *Mee v. I A Nutrition, Inc.*, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015). Bringing suit based on testing that is not compliant with FDA requirements—as Plaintiff does here—means the claims are preempted as an improper attempt to apply a non-identical rule. *See Mee*, 2015 WL 2251303, at *4 (finding food mislabeling claims preempted because plaintiffs "pleaded facts demonstrating preemption" by supporting their mislabeling claims by attaching testing that was not compliant with FDA requirements); *Rubio v. Orgain, Inc.*, 2019 WL 1578379, at *4 (C.D. Cal. Mar. 5, 2019) (same).

In SPF labeling cases specifically, if "Plaintiffs' testing is not in compliance with the sunscreen Final Rule, and if Plaintiffs seek to use that testing in support of their Complaint, as they have so alleged, they would in essence be asking this Court to find Defendants liable based on a change or deviation from the testing requirements as set out in the Final Rule." *Anglin v. Edgewell Personal Care Co.*, 2018 WL 6434424, at *8 (E.D. Mo. Dec. 7, 2018). In *Forouzesh v. CVS Pharmacy, Inc.*, 2019 WL 652887, at *5 (C.D. Cal. Feb. 15, 2019), plaintiff attached SPF test results in support of his complaint that plaintiff alleged complied with the FDA regulation, but like here, examination of the attachment showed that they did not.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

20

47445\20707844.7

The court held that plaintiff applied a "methodology, which is different from or not identical with SPF testing required by FDA regulation" and dismissed the case as preempted under 21 U.S.C. section 379r.

Because Plaintiff's Complaint on its face asks the Court to find L'Oreal liable based on a test that deviates from the detailed testing requirements as set out in the Final Rule, the Court should dismiss Plaintiff's claims as preempted.

**1.    Plaintiff's Laboratory Set The Doses Based On A Lower-Than-Expected SPF, In Violation Of The FDA Rule.**

Plaintiff's own test report shows that the laboratory knew what plaintiff's counsel wanted and violated the rule in a way that skews the results towards a lower SPF value.  In section 201.327(i)(5)(iii), "[t]he middle dose (X) in each of these dose series (i.e., the third dose) should equal the initial MEDu *times the expected SPF*.") (emphasis added).  This rule was not followed.

The "Notes" section of Table 1 shows that the laboratory understood that the product had an "Anticipated SPF 60."  This is unsurprising:  the product being tested has a label of SPF 60.  Compl. ¶ 18.  But even though the lab "anticipated" an SPF 60, it did not use an "expected" SPF of 60 in setting the doses.  Under section 201.327(i)(5)(iii), the center dose (3rd of 5) should have been based on an SPF of 60, and the other doses in proportion to that.  Instead, the UV dose series was set based on the lower result that plaintiff's counsel sought, rather than the SPF that would be expected based on the label.  *See* Compl., Exh. A at 10 (Table 1, "Notes": "Subject #s 1-2 tested at SPF 33" and "Subject #s 3-10 tested at SPF 38."); *see also id.* (subject 1 dose for test material produces a result of exactly 33.0); subject 7 and 8 dose for test material produces a result of exactly 38.0).

Looking at how the doses are set under the rule shows why deliberately setting the doses too low will skew the results.  Under section 201.327(i)(5)(iii), the expected SPF is used to set the middle dose in a series of five doses; the five doses increase by 15 percent with each successive dose, like this:

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

21

47445\20707844.7

|  |  | Expected SPF |  |  |
|---|---|---|---|---|
| 0.76X | 0.87X | 1.00X | 1.15X | 1.32X |

*See* 21 C.F.R. § 201.327(i)(5)(iii) (specifying UV exposures). The SPF value associated with each dose, including the highest dose, is thus determined by how the center dose is set. For example, setting an "expected" SPF of 33 or 38 (as was done by the lab here) leads to the following ratios:

|  |  | Expected SPF |  |  |
|---|---|---|---|---|
| 25.08 | 28.71 | 33 | 37.95 | 43.56 |
| 28.88 | 33.01 | 38 | 43.70 | 50.16 |

As the chart shows, by setting an expected SPF in the 30s, it would be impossible for any test subject to show a valid result of SPF 60. The target range meant that no one could get a result that high, because the top dose measured would be either 43.5 or 50. Worse yet, by setting the doses so low, Plaintiff's testing procedure meant that data from anyone that was received SPF 60 protection would be treated as invalid, and discarded, because they would show no erythema on any of the subsites, including the highest dose.[6]

By ignoring the "expected SPF" in setting the doses, the laboratory ignored the requirements of section 201.327. Enforcing Plaintiff's test result, as this case attempts to do, is a preempted attempt to enforce a non-identical standard for determining the SPF value.

## 2. The UV Doses For Test Subject # 3 Violated The Rule.

The data reported for test subject # 3, with a result of SPF 63.5, shows a different problem, also related to the UV dose progression for the product being tested.

---

[6] A person who had no redness (i.e., erythema) on any of the five subsites could not have an SPF calculated under section 201.327(i)(6)(i) (because there would be no value to put in the numerator), and would instead be rejected under section 201.327(i)(5)(v) because "erythema is not present on . . . the . . . protected test sites."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

22

47445\20707844.7

Because the data showing each of the doses given to each of the subjects is not included in Attachment A, the validity of the procedure cannot be fully assessed. But from the data that is included with the complaint, it is apparent that in the case of test subject # 3, the FDA protocol was not followed.

For test subject # 3, the ratio between the dose that produced redness (minimal erythemal dose) on untreated skin and protected skin using the product was calculated as an SPF of 63.5. Compl., Exh. A at 10. The doses were 533.0 for the test material, divided by 8.4 for untreated skin. *Id.*

However, these results are not possible if the FDA test procedure was actually followed. One of two rules was violated.

The first rule is the one mentioned above: that the doses are determined in proportion to the middle dose.

> For each subject, determine the final [untreated skin, control formula, and test formula values] by administering a series of five UV doses to the appropriate test sites. The middle dose . . . in each of these dose series (i.e., the third dose) should equal the initial MEDu [the untreated skin result; here, 8.4] times the expected SPF." 21 C.F.R. § 201.327(i)(5)(iii) (first two sentences).

In the case of subject # 3, the report shows that the doses were being set based on a middle dose of SPF 38. Compl., Exh. A at 10 "Notes": "Subject #s 3-10 tested at SPF 38." That means the doses were, or should have been, set as follows under section 201.327(i)(5)(iii) as follows:

|  |  | Expected SPF |  |  |
|---|---|---|---|---|
| 28.88 | 33.01 | 38 | 43.70 | 50.16 |

A result of 63.5, the reported SPF value for subject # 3, is literally "off the chart." A dose of 533.0—the result that was reported for subject # 3 for the "Test Material"—is instead 1.67X times 38 times 8.4, much higher than the 1.32X dose that the rule calls for as the highest dose. Simple math thus shows that if the lab intended to give

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

23

47445\20707844.7

a dose this high, it was disregarding the FDA rule specifying five doses and their proportion:  1.67X is not a valid fifth dose under section 201.327(i)(5)(iii).

Alternatively, under section 201.327(i)(1)(iii), "[t]he delivered dose to the UV exposure site must be within 10 percent of the expected dose."  If the 533.0 unit dose was intended to be the top dose at the correct target – 1.32X, i.e., 421 units – then it exceeded the expected dose by more than 26.5%, invalidating the test because the solar simulator malfunctioned.

Thus, whether because of solar simulator malfunction or because the laboratory deliberately gave a higher energy top dose than specified in the rule, the result for subject # 3 shows that the FDA regulation was not followed.

### 3.    Conclusion.

The process shown to calculate the SPF of 34 in Exhibit A is different from the FDA protocol from section 201.327, despite Plaintiff's conclusory allegation to the contrary.  Claims that rely on an SPF result produced by a methodology not identical to section 201.327 are preempted, and the case should be dismissed.  *See e.g., Anglin*, 2018 WL 6434424, at *8; *Forouzesh,* 2019 WL 652887, at *5.  The claim should thus be dismissed as preempted.

## VI.    THE UNJUST ENRICHMENT CLAIM UNDER NEW YORK LAW SHOULD BE DISMISSED FOR FAILURE TO ALLEGE AN UNUSUAL SITUATION NOT COVERED BY CONTRACT OR TORT CLAIMS.

Separately from the private enforcement bar and the preemption issues, the putative nationwide class claim for unjust enrichment under New York law fails as a matter of substantive law.

New York's highest court has held that a claim for unjust enrichment "is not a catchall cause of action to be used when others fail," but is instead available "only in unusual situations," and "is not available where is simply duplicates, or replaces, a conventional contract or tort claim."  *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y. Inc.*, 967 N.E.2d

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

24

47445\20707844.7

1177, 1185 (2012)); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  "Here, the unjust enrichment claim is premised on the same factual allegations as those supporting Plaintiffs' other claims, and Plaintiffs have not alleged distinct damages with respect to this claim.  Accordingly, the Court must dismiss Plaintiffs' unjust enrichment claim as duplicative." *Cooper*, 553 F. Supp. 3d at 115.  Allegations based on misrepresentation on product packaging will not support a claim for unjust enrichment under New York law, because they are covered by contract and tort law claims for statutory consumer protection, breach of express warranty, or fraud.  *Id.* at 115-16 (collecting cases). Plaintiff's claim here is similar:  she pleads to recover money paid for her purchase of the sunscreen under statutory and common law theories of warranty and misrepresentation, and thus fails to plead an "unusual situation" as required to invoke New York unjust enrichment law.  The unjust enrichment claim under New York law should thus be dismissed with prejudice.

## VII.  <u>CONCLUSION.</u>

For the foregoing reasons, the Court should grant the motion to dismiss.

Dated:  December 17, 2025

FARELLA BRAUN + MARTEL LLP

By: _____
Thomas Mayhew

Attorneys for L'OREAL USA, INC.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

MOTION TO DISMISS –
Case No. 2:25-cv-07912-AH-MAR

25

47445\20707844.7

**CERTIFICATES OF COMPLIANCE WITH
MEET AND CONFER REQUIREMENT AND WORD COUNT LIMIT**

In compliance with C.D. Cal. Local Civil Rule 7-3, counsel for the parties conferred by video conference at least 7 days prior to the filing of the motion, and were unable to reach a resolution that eliminated the necessity for a hearing. The date of the conference was December 9, 2025. The statutory bar, preemption, and unjust enrichment arguments were argued to plaintiff's counsel, and certain case citations were also provided after the conference by email. Plaintiff's counsel took the position that these arguments were not a basis for dismissal, but said that he would consider amending the complaint after the motion is filed in lieu of filing an opposition.

In compliance with C.D. Cal. Local Civil Rule 11-6.2, the undersigned, counsel of record for L'Oreal USA, Inc. certifies that this brief contains 6,362 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 17, 2025

_____
Thomas Mayhew

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400